**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **FRANKLIN LEAL** | § | |
| | § | |
| **VS.** | § | **A-16-CV-679 DAE** |
| | § | |
| **SINCLAIR BROADCASTING GROUP,** | § | |
| **and SAN ANTONIO TELEVISION, LLC** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE DAVID EZRA
        SENIOR UNITED STATES DISTRICT JUDGE

Before the Court are the following motions, as well as their associated responses and replies:

•       Defendants' Motion for Summary Judgment (Dkt. No. 91);

•       Plaintiff's Objection to Defendants' Appendix of Undisputed Facts (Dkt. No. 103);

•       Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence in Part (Dkt. No. 109);

•       Plaintiff's Motion for Leave to Supplement Discovery (Dkt. No. 111);

•       Plaintiff's Motion for Leave to Obtain Certified Copies of Police Report (Dkt. No. 112); and

•       Plaintiff's Motion for Leave to Obtain Certified Court Reporter's Transcription (Dkt. No. 113).

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules.

## I.  OBJECTIONS TO EVIDENCE

Five of the six pleadings set out above relate to the parties' objections to each other's summary judgment evidence. Leal's objection is a general one, effectively complaining about the fact that Defendants submitted an appendix with their summary judgment motion, setting forth the

facts they believe are undisputed. Dkt. No. 103. Leal is incorrect in his assertion that the appendix violates Local Rule CV-7(d)(1), and, regardless, Defendants were granted permission to exceed the page limits for their briefing. The Court therefore **DENIES** Leals's Objections to Defendants' Appendix of Undisputed Facts (Dkt. No. 103).

Defendants object to several of Leal's exhibits, complaining about their lack of authentication, lack of certification (as to deposition excerpts and a police report), and irrelevance; they also request that the Court strike the offending exhibits. Dkt. No. 109. In response, Leal filed three pleadings he styled "Motions for Leave," which in fact do not actually seek leave for anything. Dkt. Nos. 111-113. Rather, one notifies the Court that Leal has supplemented his discovery with certain social media posts (which Defendants objected to because they were not produced during discovery), another states that Leal has sought certification of a police report, and the last is a declaration of the videographer, offered in an attempt to cure the lack of a court reporter's certification for objected-to deposition excerpts. Because the documents are not truly motions, the Court **DENIES** each of them (Dkt. Nos. 111-113) as moot. As to the substantive objections Defendants make, while several of them have merit, the Court need not address them, because, as will be seen in what follows, the Court has not relied on any of the objected-to exhibits in reaching its conclusions. Accordingly, Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence in Part (Dkt. No. 109) is **DENIED.**

### III.   FACTUAL BACKGROUND

Franklin Leal brings this employment discrimination lawsuit against his former employer Sinclair Broadcasting Group, Inc., and San Antonio Television, LLC, a subsidiary of Sinclair (collectively "Defendants"). Defendants hired Leal in 2013. He was a producer of Spanish news

segments for the KEYE-TV television station Defendants own in Austin, Texas. Leal was terminated on September 11, 2015. He alleges he was terminated and discriminated against because he is Hispanic and because he suffered a nervous breakdown allegedly caused by the Defendants. Specifically, Leal alleges that shortly after Robert Cartwright, a Caucasian, was hired as the News Director at the station, the station's Spanish division's resources were redirected to the English language division. Leal alleges that in July 2015, he requested additional resources from Cartwright "equal to the English segments so Leal could perform the job duties assigned to him." Dkt. No. 45 at ¶ 9. Leal contends that after he made this request, Cartwright began to bully and harass him, creating a hostile work environment.

Leal contends that he complained to his supervisors and Human Resources that it was unfair that the Spanish side of the television station had to work much harder with fewer resources than the English side of the station. Leal contends his complaints went unanswered and that he continued to receive more work from the station without any additional resources. Leal alleges that after he complained to his supervisors about this, he was retaliated against by receiving negative feedback about his job performance. Leal alleges he suffered a nervous breakdown on August 12, 2015, and was hospitalized for eight days. He contends that the stress of his job and the negative treatment at work caused him to suffer the nervous breakdown.

Two weeks later, a television reporter and camera man were murdered during a live broadcast in Roanoke, Virginia. The murderer was a former employee of the television station where the victims worked and was also a former employee of a Sinclair station. That same day Amy Villarreal, General Manager of KEYE CBS Austin and Telemundo Austin, sent the entire KEYE station an e-mail titled "Safety is a priority," which referenced the Virginia shooting, reminded the employees

of certain safety guidelines and provided a link to a video regarding what to do in the case of an active shooter entering the premises. In response to the murders, a former employee at the KEYE station wrote a Facebook post referring to the on-air shooting and talking about the need to have a conversation about mental health and gun violence. Dkt. 91-58. In response, Leal wrote in his post, "Sometimes workplaces push you to the edge to do violent crazy things the bullying in workplaces and toxic environments [sic]." *Id.* Later that same day, Leal made a separate post, referring to the station where the shooting occurred and remarking "To be a journalist isn't an easy Job but when u have bullies in your workplace can be so crazy. That's why people need to push a movement to condemn bully [sic] at work." Dkt. 91-57.

Later than evening, KEYE reporter Lydia Pantazes posted a picture of some members of the KEYE newsroom on her Facebook page with the caption, "I couldn't imagine losing any of these wonderful people." Dkt. 91-47. Leal responded to Ms. Pantazes' post in Spanish stating "Pues q se porten bien y no hagan bullying," which translates to "Then they should behave well and don't bully." *Id.*; 91-55 at 83. Leal testified in his deposition that in referencing bullying he was referring to Cartwright and KEYE Executive Producer Ana María Lamas. *Id.* Villarreal saw all of Leal's posts and viewed them as threatening, as she felt that they "empathized with the murderer and . . . suggest[ed] violence could be warranted within a workplace," and noted that her concerns about Leal "were heightened because [she] knew Leal had a history of conflicts with co-workers." Dkt. No. 91-44 at ¶ 16. She further "learned that multiple employees were afraid that the posts were threatening, and thought they empathized with the murderer." *Id.* at ¶ 17.

Villareal attempted to contact Leal (who was still out on leave for his mental health issues) and his doctor that afternoon and evening, but was unsuccessful. Villareal reports that the next day,

as a direct result of these posts and the concerns of management and the Station staff, Don Thompson, Senior Vice President of Human Resources for Sinclair, Jamie Dembeck, Vice President of Human Resources for Sinclair and I agreed that we would not renew Leal's contract. In my view, Leal's conduct could have justified termination of his contract. However, as a group we decided to allow Leal the opportunity to be paid through the remaining time on his contract, without requiring him to return to work for the rest of the contractual term.

*Id.* at ¶ 19.  That afternoon, Villareal spoke with Leal by phone, and informed him of this decision. She also sent Leal a letter that same day notifying him that his employment contract would expire at the end of its term on November 30, 2015.  Dkt. 91-103.

Villarreal also reported her concerns to Leal's treating physician, and was advised to inform the police of her fears.  Villareal did so, and police officers visited Leal at his apartment.  Leal says he was frightened and humiliated by the police visit and suffered a relapse of his mental breakdown and had to return to the hospital.  On September 10, 2015, Leal posted more negative comments about the station on social media including a tweet in Spanish that translates to "You're not going to silence us and stop deleting my tweets cowards."  Dkt. 91-105.  After reviewing these posts Villareal met with the HR managers again, and they decided to terminate Leal's employment contract for "cause" based on his calling the station "cowards" on social media, which they believed reflected negatively on the station.  Dkt. No. 91-44 at ¶ 25.  Ultimately, Leal was replaced by an Hispanic female.  Dkt. No. 91-55 at 93-94.

On May 10, 2016, Leal filed suit in state court, and the case was subsequently removed to this Court.  In the present motion, Defendants seek summary judgment on all of Leal's claims.

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

# V. ANALYSIS

Defendants argue they are entitled to summary judgment in this case because Leal has failed to point to any evidence showing that he was discriminated against because of his national origin or alleged disability. They contend Leal had a history of job performance issues and conflicts with co-workers and that he was ultimately terminated after he made threatening comments "which fellow employees and his employer believed indicated the potential for Plaintiff to engage in workplace violence, and misuse of and name-calling on social media." Dkt. No. 91 at 1. Defendants further argue that Leal's actions violated the station's policies and that he was terminated for "Cause."

In contrast, Leal alleges he was discriminated against, retaliated against, and ultimately fired because of his national origin and "a mental impairment that substantially limited one or more of his major life activities." Dkt. No. 45 at ¶ 14. Leal alleges Defendants violated Title VII and the TCHRA by discriminating against him based on his national origin, creating a hostile work environment, and retaliating against him. He also alleges discrimination on the basis of, and failure to accommodate, his mental disability in violation of the Americans with Disabilities Act and the TCHRA. Leal also alleges that Defendants breached his employment contract and denied him leave in violation of the Family Medical Leave Act.

## A.     Title VII Discrimination Claim[1]

Leal alleges that Defendants discriminated against him by terminating his employment and by denying him resources because he is Hispanic. Title VII prohibits discrimination against an

---

[1] The Court analyzes Leal's Title VII and TCHRA claims as unified claims. "Because TCHRA is intended to correlate with Title VII, the same analysis is applied for each claim." *Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x. 295, 297 (5th Cir.), *cert. denied*, 571 U.S. 880 (2013); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical.").

employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq.* For cases based on circumstantial evidence, as this case is, a court is to apply the *McDonnell Douglas* burden-shifting analysis. See *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "A plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citations omitted), *cert. denied*, 552 U.S. 1166 (2008); *Davis*, 383 F.3d 309, 316–17. If the employer successfully articulates a legitimate, nondiscriminatory reason for its decision, the burden returns to the plaintiff to offer evidence that the reason given by the employer is merely pretext for unlawful discrimination or that the employer's purported reason for its actions was only one of the motivating factors, and that another motivating factor was plaintiffs protected characteristic. *McDonnell Douglas*, 411 U.S. at 804–05; *Autry v. Fort Bend Independent School Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).

To establish his prima facie case, Leal must show that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Standley v. Rogers*, 680 F. App'x 326, 327 (5th Cir. 2017) (quoting *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)). To demonstrate the third prong of his prima facie case—that he was subjected to an "adverse employment action"—Leal points not only to the fact that he was terminated, but also contends that

the Defendants' alleged denial of adequate personnel resources, and their constant negative evaluations of him are also actionable on their own.

The Fifth Circuit has made clear that an adverse employment action is an "ultimate employment decision" like "hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Stroy v. Gibson on behalf of Dep't of Veterans Affairs*, 896 F.3d 693, 699 (5th Cir. 2018) (internal citations omitted) Leal's complaint that he was overworked and did not receive adequate resources is insufficient to amount to an adverse employment action. *See e.g., Leckemby v. Greystar Mgmt. Servs., LP,* 2015 WL 3408667 at *5 (W.D. Tex. May 26, 2015) (refusal to provide employee with more resources insufficient to raise a fact question for trial); *Bustamante v. Hill Country Mem'l Hosp., Inc.*, 2010 WL 3909412, at *9 (W.D. Tex. Sept. 29, 2010) (failure to provide help with one's work does not qualify as an adverse employment action).

Similarly, Leal's complaint that he was constantly being criticized and evaluated by his supervisors also does not qualify as an actionable adverse action. An employer's criticism of an employee, without more, cannot form the basis of an actionable adverse employment action. *Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir.), *cert. denied*, 531 U.S. 816 (2000) (mere accusations and criticism not adverse employment actions). Similarly, poor performance reviews do not qualify as ultimate employment actions. *Cardenas-Garcia v. Texas Tech University*, 118 F. App'x 793, 794 (5th Cir. 2004), *cert. denied*, 546 U.S. 811 (2005); *Mitchell v. Snow*, 326 F. App'x 852 (5th Cir. 2009) (lower-than-expected job performance review did not qualify as adverse employment action). Leal does not contend that any of his performance evaluations or the criticisms

of his work had any affect on his pay, promotion decisions, or the conditions of employment. As the Fifth Circuit has explained, "petty slights, minor annoyances, and simple lack of good manners that employees regularly encounter in the workplace . . . are not actionable retaliatory conduct." *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008). Leal's alleged mistreatment by his supervisors falls into this category, and does not amount to the type of employment actions that can form the basis of a Title VII claim

There is no question, however, that termination is an actionable employment decision. With respect to that claim, Defendants argue that Leal has failed to show a prima facie case of discrimination because he has failed to demonstrate the fourth factor of the prima facie case—that he was replaced by someone outside his protected class, or that other similarly situated non-class members were treated more favorably than Leal was. The Court agrees. There is no dispute that Leal was replaced by an Hispanic woman. Thus, Leal argues that non-Hispanic employees were treated more favorably than him because they were Caucasian. Leal argues that the majority of the Caucasian workers working on the English version of the newscast were Caucasian and that they were not asked to do as much work as Leal. However, Leal has failed to point the Court to any evidence in the record to support these allegations other than his conclusory assertions. Leal has failed to identify a "similarly situated" Caucasian that was *not* terminated after doing something akin to calling their supervisors "cowards" or posting threatening comments on social media. As the Fifth Circuit has explained:

> The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must

> "share[ ] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant.

*Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017), *reh'g denied* (Apr. 27, 2017). Because Leal has failed to identify a similarly situated coworker outside of his protected class who also committed similar acts of alleged misconduct, but who was treated more favorably than Leal, he has failed to allege a prima facie case of employment discrimination under Title VII or the TCHRA.

**B.**     **Title VII Hostile Work Environment Claim**

Leal also alleges he was subjected to a hostile work environment because he was Hispanic. Leal alleges that he was the victim of "bullying and harassment" and that Villarreal, Lamas, Cartwright and the nightly news anchor Daniel Morales all "participated in creating a harassing work environment." As examples of harassment, Leal complains that his supervisors (Hispanic and Caucasian) overloaded him with work, subjected him to daily evaluations and failed to provide him with sufficient personnel to assist him with his job.

In order to prove a hostile work environment claim under Title VII, a plaintiff must show that (1) he is in a protected class; (2) he suffered unwelcome harassment; (3) the harassment was based on his membership in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment, but did not take proper remedial action. *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 450 (5th Cir. 2018) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). To demonstrate the fourth prong, a plaintiff must show that the harassment was "sufficiently severe or pervasive" such that it created "an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir.)

(internal quotation omitted), *cert. denied*, 568 U.S. 817 (2012). This is a multi-factor analysis, looking to the frequency and severity of the actions, whether danger or humiliation (not simply personal offense) resulted, and whether the conduct interfered with the plaintiff's work performance. *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Further, to show that a work environment is hostile, the evidence must demonstrate that it was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Only substantial and serious incidents violate Title VII. "Teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788. Thus, courts must "filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (citations omitted).

As noted, Leal complains that his supervisors criticized his work, continuously evaluated his job performance, failed to provide him with sufficient personnel and assigned him too much work. None of these actions are the sort of "severe or pervasive" harassment that is required for a hostile work environment claim. *See Boss v. Castro*, 816 F.3d 910, 921 (7th Cir. 2016) (not a hostile work environment to be overworked, assigned unpreferred tasks or being placed on a performance improvement plan); *Porto v. Chevron NA Expl. & Prod. Co.*, 2018 WL 3559103, at *15 (S.D. Tex. July 24, 2018) ("close" supervision and assignment of new and additional tasks with short deadlines not hostile work environment). Where, as here, the employer's actions were all rationally related to work performance, and were not physically threatening, humiliating, or even offensive, they do not satisfy the standard for a hostile work environment claim.

Even if Leal had been able to show that he had been subjected to pervasive and severe harassment, his evidence fails to show that this was based on his national origin. Leal has presented no evidence whatsoever that any of his supervisors' actions were based on his national origin. *See Gibson v. Verizon Services Organization, Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) (finding no hostile work environment claim where plaintiff presented only her own inference that her supervisor's actions were based on her protected characteristic). Notably, two of his three supervisors were Hispanic—the General Manager of the Station, Amy Villarreal, and the Executive Producer, María Lamas Brouhard. Leal has cited no evidence from which a reasonable fact-finder could conclude that the actions about which he complains occurred because he is Hispanic. Accordingly, Leal has failed to establish a prima facie case of hostile work environment discrimination.

## C.    Title VII Retaliation Claim

Leal also alleges that he was retaliated against after he complained about being treated unfairly, in violation of Title VII and the TCHRA. The alleged retaliation was being asked to do more with less, and also his termination. Dkt. No. 45 at p. 9. Because the *McDonnell Douglas* framework also applies to retaliation cases, Leal must first make a prima facie showing of retaliation. *See Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000). To establish a prima facie case of retaliation under Title VII and the TCHRA, Leal must prove: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (Title VII).

Leal has failed to produce evidence that he engaged in any activity protected by Title VII prior to his termination. Protected activity means (1) opposing an unlawful employment practice, or (2) making a charge under Title VII, or testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)). "To satisfy the protected activity requirement, an employee must oppose conduct made unlawful by Title VII; complaining of unfair or undesirable treatment not addressed by Title VII will not suffice." *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007).

At the time of his termination Leal had yet to file his charge of discrimination with the EEOC and the Texas Workforce Commission. Leal points to no evidence in the record that at any time before his termination he ever complained to anyone at the station that he was being discriminated against because of his national origin. Instead, the evidence shows Leal complained about the lack of resources (including the need for additional staff), that none of his supervisors would listen to him, and that he was working as a "slave" in a "second class newscast." Dkt. No. 99 at 7-8. None of these things are prohibited practices under state or federal employment statutes, however, and there is no evidence that Leal claimed to anyone that these things were happening to him because he was Hispanic (that is, until *after* he was fired). Title VII only prohibits retaliating against an employee when the employee has engaged in specific protected activity. Because the undisputed evidence is that Leal did not engage in any protected activity prior to the alleged acts of retaliation, this claim fails. *See Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F. App'x 159, 162 (5th Cir. 2008); *Tratree v. BP North American Pipelines*, 277 F. App'x 390, 396 (5th Cir. 2008); *Richard*, 233 F. App'x at 337-38.

14

D.      **FMLA Claims**

Leal also alleges that by terminating his employment the Defendants interfered with his rights under the FMLA and retaliated against him for taking FMLA leave. The FMLA requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons, such as the birth of a child or the occurrence of a serious health condition. 29 U.S.C. § 2612(a)(1). To ensure employer compliance, the FMLA mandates that employees who take FMLA leave are entitled to be restored to their old positions. *Id.* § 2614(a). Additionally, the FMLA makes it unlawful for any employer to "interfere with, restrain, or deny" the exercise of any right provided under the FMLA. *Id*. § 2615(a)(1). The FMLA also protects employees who take FMLA leave from retaliation for have done so. *Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 649 (5th Cir. 2004). As noted, Leal makes both an interference claim, and a retaliation claim.

1.      **Interference Claim**

For an employee to establish a prima facie FMLA interference claim, the employee "must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Leal does not dispute that when he suffered his nervous breakdown Defendants granted him FMLA leave. However, Leal contends that Defendants violated the FMLA by interfering with his rights under the FMLA when it terminated his employment, which had the effect of denying him FMLA leave. Whether this is a tenable claim depends on whether the Defendants terminated Leal for reasons unrelated to his having taken FMLA leave. "[A] plaintiff's right to reinstatement is

extinguished when her employer makes the decision to terminate employment for otherwise appropriate reasons unrelated to the exercise of rights under the FMLA." *Bernard v. Bishop Noland Episcopal Day Sch.*, 630 F. App'x 239, 241 (5th Cir. 2015) (*citing Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682 (5th Cir. 2013)).  As the Fifth Circuit explained in *Shirley*:

> It is true that an employer may not fail to reinstate an employee following his return from FMLA leave, *but only if the statutory requirements have been satisfied*. Among those requirements is one dictating that an employee must actually be entitled to the position to which he seeks reinstatement, 29 U.S.C. § 2614(a)(3); and an employer may challenge that entitlement by offering evidence that the employee would have lost his position even had he not taken FMLA leave, 29 C.F.R. § 825.216(a). Thus, although denying an employee the reinstatement to which he is entitled generally violates the FMLA, denying reinstatement to an employee whose right to restored employment *had already been extinguished*—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the Act.

726 F.3d at 682-83.  The burden is on the employer to show that at the time reinstatement is requested, an employee would not otherwise have been employed for reasons unrelated to exercise of rights secured by the FMLA.  *Id.*

As discussed above, Defendants have articulated a legitimate reason for terminating Leal in this case—his threatening posts and attacks on the station on social media—which violated the station's policies and Leal's employment agreement.  Leal has failed to point to any evidence to counter this.  Accordingly, because Leal was validly terminated for reasons unrelated to any exercise of FMLA rights, he was not entitled to reinstatement and therefore his interference claim fails.  *See Bernard*, 630 F. App'x at 242 ("Because the district court found that Bernard was validly terminated for reasons unrelated to any exercise of FMLA rights, it correctly determined that she was not entitled to reinstatement and that her interference claim fails."); *McCollum v. Puckett Mach. Co.*, 2015 WL 11112550, at *3 (S.D. Miss. Feb. 3, 2015), *aff'd*, 628 F. App'x 225 (5th Cir. 2015).

## 2. Retaliation Claim

The prima facie case for an FMLA retaliation claim requires proof of that (1) the plaintiff engaged in protected activity (requesting or taking FMLA-qualifying leave), (2) an adverse employment action occurred, and (3) he was either treated less favorably than a similarly situated employee who had not requested leave or there is a casual link between the protected activity and adverse employment action. *Mauder v. Met. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir.), *cert. denied*, 549 U.S. 884 (2006). If the plaintiff establishes a prima facie case of either interference or retaliation, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action taken. *See Hagan v. Echostar Satellite*, *L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). If the defendant meets this production obligation, the burden shifts back to the plaintiff to show "by a preponderance of the evidence that the reasoning presented by [the defendant] is a pretext for retaliation." *See Mauder*, 446 F.3d at 583 (internal quotation marks omitted).

Leal has failed to demonstrate the third element of a prima facie case of FMLA retaliation. He has not shown that he was treated less favorably than a similarly situated employee who had not requested leave, or that there is a casual link between his taking leave and his termination. The only evidence in his favor is the temporal proximity between him taking FMLA leave and his termination. However, as the Fifth Circuit has clarified "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Roberson v. Alltel Information Services*, 373 F.3d 647, 656 (5th Cir.2004) ("[w]ithout more than timing allegations . . . summary judgment in favor of [the defendant] was proper."). The evidence shows that the discussion of terminating Leal arose not when he first took leave, but instead when, while

he was on leave, he began making derogatory posts about Defendants on social media. To the extent there is any temporal proximity, it is between Leal's social media activities and his firing. And, as has already been discussed above, even if Leal could demonstrate a prima facie case of FMLA retaliation, he has failed to demonstrate that Defendants' stated legitimate, non-discriminatory reasons for his termination were pretexts for discrimination. Accordingly, Defendant's are entitled to summary judgment on Leal's FMLA retaliation claim.

**E.     ADA Claims**

Leal also alleges that the Defendants violated his rights under the ADA. He asserts that he "was disabled by a mental impairment due to the nervous breakdown caused by the Defendants," and Defendants discriminated against him because of this disability when they terminated him while he was out on leave for the breakdown. Dkt. No. 45 at 10. Leal also alleges that Defendants failed to accommodate his disability by terminating his employment instead of permitting him to take at least two weeks off to recover.

**1.     Discrimination Claim**

Title II of the ADA prohibits employer discrimination of an employee who is a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a). To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; (3) that he was subject to an adverse employment decision on account of his disability. *Equal Emp't Opportunity Comm'n v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). If the employee is successful in establishing her prima facie case, then the employer must articulate a legitimate, nondiscriminatory reason for terminating the employee. *EEOC v.*

*Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). If the employer does so, then the burden shifts back to the employee to show that the employer's proffered reason is pretextual. *Id.*

Defendants first challenge Leal's claim that he was a "qualified individual with a disability" under the ADA. "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This definition is qualified by the requirement that an employee not "pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). A direct threat is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). Numerous courts have found that an employee is not a qualified individual if he has made threats of violence in the workplace. *See, e.g., Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290-91 (11th Cir. 2002) (holding that an employee's "inability to work with others. . . insubordination, and threats of violence" rendered her not "otherwise qualified" within the meaning of the ADA); *Palmer*, 117 F.3d at 352 (an employee's threats of physical violence render her not "otherwise qualified" under the ADA); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262 (2000) (evidence that teacher threatened members of the school board disqualified him from his job); *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998) ("An employee who is fired because of outbursts at work directed at fellow employees has no ADA claim."); *Tran v. Pflugerville Indep. Sch. Dist.*, 2014 WL 12160774, at *5 (W.D. Tex. May 23, 2014) ("[O]nce he threatened his supervisors, Tran was no longer qualified to work as a teacher at PISD."); *Mayo v. PCC Structurals, Inc.*, 2013 WL 3333055, at *4 (D. Or. July 1, 2013) (holding that employee was

not a qualified individual with a disability under the ADA because of his violent threats against coworkers). As the Seventh Circuit explained:

> [I]f an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act. The Act does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge—in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone. The Act protects only "qualified" employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one.

*Palmer*, 117 F.3d at 352 (internal citations omitted). As the Eleventh Circuit held in *Williams*, "[a]n employee's ability to handle reasonably necessary stress and work reasonably well with others are essential functions of any position. Absence of such skills prevents the employee from being 'otherwise qualified.'" 303 F.3d at 1290-91.

For these reasons, Leal has failed to demonstrate he was a qualified individual with a disability under 42 U.S.C. § 12111(8). As noted, he was terminated for making threatening posts against his coworkers and negative posts against his employer on social media. Such actions disqualify Leal from his position. As the Fifth Circuit has stated: "We adopt for an ADA claim the well-expressed reasoning applied in the context of a protected activity-retaliatory discharge claim: the rights afforded to the employee are a shield against employer retaliation, not a sword with which one may threaten or curse supervisors." *Hamilton*, 136 F.3d at 1052. Thus, an employee "cannot hide behind the ADA and avoid accountability for his actions." *Id.* Leal has thus failed to demonstrate the second element of a prima facie case of disability discrimination under the ADA.

Even if Leal was able to establish a prima facie case of employment discrimination, summary judgment would still be appropriate on this claim. As with the other claims, Defendants have offered

a legitimate non-discriminatory reason for terminating Leal—his threatening and insubordinate actions. Leal has failed to demonstrate that these proffered reasons were actually pretexts for discrimination. *See Palmer v. Circuit Court of Cook Cty., Ill.*, 117 F.3d 351, 352 (7th Cir. 1997), *cert. denied*, 522 U.S. 1096 (1998) ("There is no evidence that Palmer was fired because of her mental illness. She was fired because she threatened to kill another employee."). For this reason as well, the ADA discrimination claim fails.

### 2. Reasonable Accommodation Claim

Leal also alleges that Defendants failed to provide him with a reasonable accommodation under the ADA since they terminated his employment instead of allowing him two more weeks of medical leave. Discrimination under the ADA includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting § 12112(b)(5)(A)). A plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Id.*

As stated above, the Court has determined that Leal is not a qualified individual with a disability and he thus fails to meet the first prong. In addition, Leal has failed to show that reinstating him to his previous position would be a reasonable accommodation given his threatening and negative posts on social media. "Courts have consistently explained that a 'second chance' or

forgiveness of prior misconduct otherwise warranting termination is not a 'reasonable accommodation.'" *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 729 (N.D. Tex. 2013), *aff'd sub nom.,Green v. Medco Health Sols. of Texas*, L.L.C., 560 F. App'x 398 (5th Cir. 2014). Accordingly, Leal's reasonable accommodation claim fails.

**E.     Wrongful Discharge/Breach of Contract Claim**

In his final claim, Leal alleges that the Defendants violated his Employment Agreement by terminating his employment while he was on medical leave, and by failing to pay him overtime as required by the Employment Agreement. Though the default position in Texas is employment is "at will," an employer and employee may agree to contractual limitations on the employment relationship. *Malone v. Ariba, Inc.*, 99 F. App'x 545, 552 (5th Cir. 2004); *United Transp. Union v. Brown*, 694 S.W.2d 630, 632 (Tex. App. 1985, writ ref'd n.r.e.) (noting that although Texas is at will, "valid contractual limitations on the right to terminate may be imposed by agreement of the parties."). In order to establish a wrongful termination claim, "an employee must first prove that he and his employer had a contract specifically depriving the employer of the right to terminate the employee at will." *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir.), *cert. denied*, 502 U.S. 984 (1991). There is no dispute here that the Defendants and Leal had a written contract governing Leal's employment. The question is whether there is evidence suggesting the Defendants breached the Employment Agreement.

Leal first alleges that the Defendants breached the Employment Agreement by terminating his employment while he was on out on leave. Although Leal refers to the contractual termination provision in his Second Amended Complaint, he fails to explain exactly how the Defendants breached this provision in terminating him. The termination provision contained in the Employment

Agreement clearly states that an employee can be terminated by the employer for "Cause." Dkt. No. 91-65 at ¶ 8.1(a)(iii). The Employment Agreement defines "Cause" to include (1) the commission of any act that "reflects unfavorably upon Employee, Employer or the Station, as reasonably determined by Employer," (2) violation of "any of Employer's policies" and (3) "insubordination or other misconduct as determined by Employer in its reasonable discretion." *Id.* at ¶ 8.1(b)(i),(vi) & (ix). Defendants argue that Leal's conduct including threatening social media posts and his public reference to station managers as "cowards," reflected negatively on the station and was misconduct. In addition, the Defendants contend that Leal's conduct violated numerous of their policies, including a policy prohibiting employees from publishing "false or malicious statements concerning the Company, clients, managers or any employee," and stating that employees may not "be insubordinate" or "disrespectful" towards managers and a policy concerning the improper use of the company's computers and equipment. Dkt. No. 91-2 at 10-11. Leal has failed to offer any evidence to create a fact question regarding the Defendants' reasons for firing him. Further, as a matter of law, these facts qualify as "Cause" under his Employment Agreement.

Leal also alleges that the Defendants violated his Employment Agreement by failing to pay him overtime compensation for working in excess of forty hours a week. However, Leal has failed to provide the Court with any summary judgment evidence showing that he actually worked overtime, that he notified his employer of such overtime, and that he was never paid for such overtime. Leal admits in his Reply that he did not document any alleged overtime compensation because "[i]t would have been additional work to have to request permission to work overtime, on a daily basis." Dkt. No. 99 at 20. Accordingly, Leal has failed to demonstrate that Defendants

violated the Employment Agreement by failing to pay him overtime compensation.[2]   Based upon

the foregoing, Leal has failed to demonstrate that the Defendants breached the Employment

Agreement.[3]

## VI. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the

District Court **GRANT** Defendants' Motion for Summary Judgment (Dkt. No. 91) in its entirety and

enter Judgment in favor of the Defendants in this case.

## VII. WARNINGS

The parties may file objections to this Report and Recommendation.   A party filing

objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections. *See*

*Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

---

[2]Even if Leal had produced sufficient evidence that Defendants failed to pay him overtime compensation, his state breach of contract claim would nevertheless be dismissed because it would be preempted by the FLSA, and Leal has not brought an FLSA claim.  *See Estraca v. Rockwater Energy Sols., Inc.,* 2016 WL 3748612 at *2 (W.D. Tex. July 7, 2016); *Botello v. COI Telecom, L.L.C.*, 2010 WL 3784202 (W.D. Tex. Sept. 21, 2010) (unjust enrichment claims based on FLSA violations preempted by the FLSA); *see also Coberly v. Christus Health*, 829 F. Supp. 2d 521, 525 (N.D. Tex. 2011) ("State law claims are preempted by the FLSA to the extent the plaintiff seeks damages for unpaid minimum wages or unpaid overtime compensation.").

[3]Though Leal arguably raised breach of contract claims based on bullying, making false police reports, canceling medical insurance, etc. (*see* Dkt. No. 45 at 11), he has abandoned those claims by not addressing them in his briefing.  *See Avneri v. Hartford Fire Ins. Co.*, 2017 WL 4663867, at *2 (E.D. Tex. Oct. 17, 2017) ("Plaintiff abandoned his negligence claim when he failed to respond to Defendant's argument that such a claim did not exist.").

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 26th day of November, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE